UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

MOSAIC 360, LLC
1329 WEST GRAND AVENUE, SUITE 1A
PORT WASHINGTON, WI 53074,

        Plaintiff,

  v.

PAUL HULTGREN
1032 CANDLEBERRY LANE
GRAFTON, WI 53024,

Case No.  19-CV-

and

LESLIE HULTGREN
1032 CANDLEBERRY LANE
GRAFTON, WI 53024,

        Defendants.

## COMPLAINT

The Plaintiff, Mosaic 360, LLC ("Mosaic 360"), alleges the following against the Defendants, Paul and Leslie Hultgren:

### THE PARTIES

1.    Plaintiff, Mosaic 360, LLC, is a Delaware limited liability company with its principal office located at 1329 West Grand Avenue, Suite 1A, Port Washington, Wisconsin 53074.

2.    Defendant, Paul Hultgren, is an adult resident of the State of Wisconsin residing at 1032 Candleberry Lane, Grafton, WI 53024.

3.     Defendant, Leslie Hultgren, is an adult resident of the State of Wisconsin residing at 1032 Candleberry Lane, Grafton, WI 53024.

4.     Upon information and belief, Paul and Leslie Hultgren are married to each other.

## JURISDICTION AND VENUE

5.     This Complaint includes a civil private cause of action arising under the laws of the United States, 18 U.S.C. § 1030(g), for damages sustained by the Plaintiff caused by computer crime and abuse. This Court has subject matter jurisdiction over federal questions pursuant to 28 U.S.C. § 1331.

6.     This Court has supplemental subject matter jurisdiction over any Wisconsin state and common law claims arising out of the facts alleged herein pursuant to 28 U.S.C. § 1367(a). Any Wisconsin state and common law claims asserted herein are so related to the federal claims as to form part of the same case or controversy.

7.     Venue is proper in the District under 28 U.S.C. § 1391(b)(1) & (2) because the Defendants are residents of this District and a substantial part of the events occurred in this District.

## GENERAL ALLEGATIONS

### I.     Background

8.     Mosaic 360 is a private equity firm created to invest in and grow other businesses, subject to agreed terms of its Operating Agreement.

9.     Mosaic 360 has previously managed and/or owned or currently manages and/or owns all or part a number of entities, including Ecco Ride, LLC, STS-NA, LLC, Yellow Bus

2

Nation, LLC, Agilex Business Solutions, LLC, Nagel & Associates (collectively, "Mosaic 360 Entities").[1]

10.     Mosaic 360 executed an Operating Agreement under the laws of the State of Delaware that became effective on January 1, 2016.

11.     When the Operating Agreement became effective on January 1, 2016, Mosaic 360 was owned by three entities: SPH Global, LLC; Johnson Global, LLC; and CTH Global, LLC. It was composed of 1,000 Units.

12.     As of January 1, 2016, CTH Global, LLC ("CTH") owned 150 Units of Mosaic 360, which represented approximately 15% of Mosaic.

13.     CTH Global is a Wisconsin limited liability company with its principal office located in Grafton, Wisconsin.

14.     Upon information and belief, Paul Hultgren owned, controlled, and directed CTH's actions.

15.     As of January 1, 2016, SPH Global, LLC, ("SPH Global") owned 750 Units of Mosaic 360, which represented approximately 75% of Mosaic.

16.     Mr. Brenen Sieber owns and controls SPH Global.

17.      As of January 1, 2016, Johnson Global, LLC ("Johnson Global") owned 100 Units of Mosaic 360, which represented approximately 10% of Mosaic.

18.     Mr. Ryan Johnson owns and controls Johnson Global.

19.     Mr. Sieber and Mr. Johnson are authorized by virtue of their ownership interests in Mosaic 360 and their role as Managing Members to pursue an action on behalf of Mosaic 360.

---

[1] Where a specific entity, rather than the collective, is relevant, Plaintiff will identify the entity and Mosaic 360's relationship to the entity.

20.     When Mosaic 360's Operating Agreement became effective on January 1, 2016, Mr. Sieber, Mr. Johnson, and Paul Hultgren served as the Board of Managers.

## II.     Paul Hultgren Conspires and Steals Confidential, Proprietary Mosaic 360 Information

21.     On March 8, 2017, after various financial misdeeds and breaches of fiduciary obligations by Paul Hultgren, he was terminated as an employee of Mosaic 360, and on March 9, he was removed from the Board of Managers.

22.     When Paul Hultgren was terminated, Mosaic 360 demanded that he return his work laptop, phone, and all other work property. Paul Hultgren refused to return his work devices. Mosaic 360 also removed Paul Hultgren's access to his business accounts, including his email account.

23.     On March 13, 2017, Mr. Ashley York, a friend that Paul Hultgren had hired, was also terminated from Mosaic 360 employment.

24.     Although Paul Hultgren no longer had current access to his email account once terminated, upon information and belief, Paul Hultgren and Mr. York copied all of the emails that were archived onto his work computer, which could be copied without current access to his email account. Upon information and belief, these emails were saved to an external hard drive. These emails contained confidential, proprietary information, including trade secrets, belonging to Mosaic 360, the Mosaic 360 entities, and the clients they served.

25.     Upon information and belief, Paul Hultgren has not turned over the external hard drive containing this confidential, proprietary information and continues to refuse to do so.

26.     As of March 2017, Leslie Hultgren, was employed by Nagel & Associates, a/k/a Navigen Wealth Management. At that time, Mosaic 360 owned approximately one-third of Nagel & Associates. Additionally, Mosaic 360 paid for and supplied certain technology and

4

equipment to Nagel & Associates, including the laptop and smartphone used by Leslie Hultgren in the course and scope of her employment.

27.     Upon information and belief, shortly after he had been terminated by Mosaic 360, Paul Hultgren used Leslie Hultgren's computer and credentials to access emails belonging to Mosaic 360 and Nagel & Associates. These emails contained confidential business information to which Paul Hultgren was no longer entitled. These emails were saved to Paul Hultgren's personal laptop. Paul Hultgren had no right to use a Mosaic 360 computer or to access a Mosaic 360 email account. Leslie Hultgren had no right to save Mosaic 360 and Nagel & Associate emails to an unsecured, private laptop.

28.     In addition to the physical devices Mosaic 360 provided, Mosaic 360 employees had access to Mosaic 360's Dropbox. Dropbox is a data storage service that Mosaic 360 used to save and host confidential, proprietary information so that it could be shared amongst its employees. In order to access Mosaic 360's information, an employee had to create a password-protected account. Then, Mosaic 360 had to grant the employee permission to access the information. Within Mosaic 360's Dropbox, there were multiple virtual folders; Mosaic 360 determined on an individual basis to which folders an employee could have access. Upon information and belief, Mr. York was the Mosaic 360 employee tasked with creating and managing the Dropbox, its folders, and the employees' access to the folders.

29.     When Paul Hultgren and Mr. York were terminated, Mosaic 360 revoked their right to access the Dropbox or any of the information within the Dropbox. Leslie Hultgren, because she was still an employee of Nagel & Associates, retained access to some of the Mosaic 360 Dropbox folders. Unbeknownst to Mosaic 360 Management, this access included Mosaic 360 files outside of the folders pertaining to Nagel & Associates, her employer. Despite having

access, Leslie Hultgren had never downloaded any of the documents within the Mosaic 360 Dropbox prior to March 8, 2017.

30. Upon information and belief, shortly after they were terminated, Paul Hultgren invited Mr. York over to the Hultgren household. That evening, the Dropbox account registered to Leslie Hultgren accessed and downloaded a variety of Mosaic 360 documents on the Mosaic 360 Dropbox, including, but not limited to, business development plans, business acquisition reports, prospective investments and projects, and financial records. Upon information and belief, Paul Hultgren and Mr. York used Leslie's Dropbox account to access Mosaic 360's confidential, proprietary information and searched every folder Leslie Hultgren still had access to in order to steal any documents or records they desired or found valuable. Upon information and belief, Paul Hultgren and Mr. York also took screenshots (or pictures) of other Mosaic 360 documents and records that they did not download. Both Paul Hultgren and Mr. York knew, or should have known, they were not authorized to access this information because their personal accounts had been terminated.

31. On or around April 2017, Leslie Hultgren resigned from her employment with Nagel & Associates.

32. Upon leaving, Leslie Hultgren was told to return all property and proprietary information that belonged to Mosaic 360 and all of its entities. This included the proprietary information Paul Hultgren and Leslie Hultgren had stolen and placed on Paul Hultgren's personal laptop and/or external hard drive. Paul and Leslie Hultgren refused to return the proprietary information or any of their electronic devices, despite not being entitled to retain any of it.

33. Upon information and belief, Paul Hultgren was directly involved in Leslie Hultgren's actions to transmit and retain confidential and proprietary information belonging to Mosaic 360.

34. Because Paul Hultgren and Leslie Hultgren retained Mosaic 360 information and property improperly, Mosaic 360 was required to retain legal counsel and seek a temporary restraining order against Leslie Hultgren ordering the return of the information and property. Because of Paul and Leslie Hultgren's theft, Mosaic 360 incurred over $100,000 in legal fees in an attempt to retrieve all of the stolen property.

35. After Mosaic 360 demanded the return of its property from Paul Hultgren and Leslie Hultgren, but before any property was returned, Paul Hultgren asked Mr. York how to perform a factory reset on Leslie Hultgren's phone, which would effectively erase all of the data and activity on the phone. Paul Hultgren also asked whether Mosaic 360 would be able to determine when the factory reset was performed.

36. Upon information and belief, Leslie Hultgren did not perform a factory reset, but did individually delete every email, text message, phone call, or other source of data relating to Mosaic 360 and its entities, like Nagel & Associates, from prior to and including the date she resigned from Nagel & Associates. In doing so, Leslie Hultgren destroyed proprietary information and damaged the Mosaic 360 device.

37. Upon information and belief, Paul Hultgren also performed, or instructed Mr. York to perform, factory resets on York's Mosaic 360 devices as well. Upon information and belief, Mr. York performed a factory reset, per Paul Hultgren's request, on his devices on or around March 9, 2017. Upon information and belief, Paul Hultgren requested the factory reset with the knowledge that, or he should have had the knowledge that, his attorney had sent

7

litigation hold letters to Mosaic 360 and its employees on March 8, 2017, demanding the preservation of evidence.

38.     Because Mosaic 360 could not determine how much of its confidential and proprietary information Paul Hultgren, Leslie Hultgren, and/or Mr. York had stolen, manipulated, and/or deleted, Mosaic 360 hired a forensic analysis firm to examine their electronic devices to determine what they had done. The forensic analysis firm charged Mosaic 360 almost $60,000 to perform its preliminary examinations of the devices and informed Mosaic 360 that it would cost thousands of dollars more to attempt to identify and recreate all of the confidential, proprietary information that Paul Hultgren, Leslie Hultgren, and Mr. York had stolen, manipulated, and/or deleted.

39.     Despite the court order against Leslie Hultgren, Paul Hultgren refused to return his Mosaic 360 devices. Upon information and belief, Paul Hultgren alleges his Mosaic 360 phone was given to the forensic analysis firm, who refused to return it to Mosaic 360. Paul Hultgren refused to allow any of the information from his phone to be provided to Mosaic 360. To date, Mosaic 360 has never received any report about the condition of Paul Hultgren's Mosaic 360 phone. Based upon Leslie Hultgren's tampering and deletions from her phone, Mosaic 360 believes Paul Hultgren also deleted Mosaic 360 proprietary information from his phone.

40.     To date, Paul Hultgren's Mosaic 360 phone and laptop have not been returned to Mosaic 360. Upon information and belief, either Paul still has both or Paul turned one and/or both devices over to the forensic analysis firm but refused to allow the firm to return the devices to Mosaic 360.

41.     During this time, Mosaic 360 and the Hultgrens were involved in actual litigation (arising from the Temporary Restraining Order Mosaic 360 was forced to seek against Leslie Hultgren) and threatened litigation (arising from Paul Hultgren's termination).

42.     As part of the threatened litigation, Paul Hultgren requested access to confidential company records (the "Records"), including credit card statements and reconciliation statements for Mosaic 360. In April 2017, Mosaic 360 provided nearly 3,000 Bates-stamped documents on several conditions, including that Paul Hultgren did not use the Records for any purpose other than to evaluate the financial condition of Mosaic 360 and that Paul Hultgren destroy all copies of the Records in his possession within 30 days of receipt.

43.     Paul Hultgren accepted these conditions by accessing and downloading the Records.

44.     Upon information and belief, Paul Hultgren still possesses the Records and did not delete them as required.

45.     Upon information and belief, Paul Hultgren selectively used the credit card statements within the Bates-stamped documents to file a lawsuit against Mr. Sieber and Mr. Johnson, which he knows or should know to be factually inaccurate and frivolous.

III.    **Paul Hultgren Uses the Mosaic 360 Trade Secrets He Stole to Tortiously Interfere with Mosaic 360's Funding and Business Opportunities**

46.     Before Paul Hultgren was terminated, Mosaic 360 had approached Bank First National ("BFN") about securing funding that would allow Mosaic 360, through Nagel & Associates, to invest and acquire a new company. Mosaic 360 expected to receive a funding commitment letter from BFN.

47.     On or around March 8, 2017, the day Mosaic 360 terminated Paul Hultgren as an employee and gave notice of its intent to remove him as a Manager, Mr. York messaged Paul

Hultgren: "You should take a few minutes to call the bank and anyone else whose number would cause him to freak out." Upon information and belief, Mr. York was referring to BFN, of which Paul Hultgren's uncle serves as Chairman of the Board.

48. Upon information and belief, after being terminated and removed as a Manager, Paul Hultgren contacted BFN in an attempt to destroy the funding commitment that BFN was expected to provide to Mosaic 360. Upon information and belief, Paul Hultgren used the project files, financials records, and other trade secrets that he stole from Mosaic 360's Dropbox, through Leslie Hultgren's account, to interfere with the funding commitment from BFN.

49. Mosaic 360 and Nagel & Associates never received the funding commitment promised to them by BFN. As a direct result, Mosaic 360 and Nagel & Associates lost the opportunity to acquire a new company. Mosaic 360's business relationship with Nagel & Associates was also destroyed because of Paul's interference with the funding request from BFN.

50. Upon information and belief, Paul Hultgren also used the trade secrets he stole to interfere with a lien release between Mosaic 360 and BFN. Because of Paul Hultgren's interference, BFN engaged legal counsel to review the lien release and then charged Mosaic 360 for the associated legal fees.

## IV. Paul Hultgren Commits Identity Theft to Tortiously Interfere with Mosaic 360's and Mosaic 360 Entities' Bank Accounts and Banking Relationships

51. When Mosaic 360 removed Paul Hultgren as a Manager of Mosaic 360, it also removed him as a Manager to any of the Mosaic 360 Entities, including but not limited to Ecco Ride, LLC, STS-NA, LLC, Agilex Business Solutions, LLC, Yellow Bus Nation, LLC.

52. Because Paul Hultgren had been removed as Manager and terminated as an employee, he no longer had any right to access, alter, monitor, change, request information,

interfere, or interact with any of Mosaic 360's or the Mosaic 360 Entities' bank accounts or other key financial information.

53. Upon information and belief, around March 23, 2017, Paul Hultgren attempted to close a line of credit that STS-NA, LLC[2], had with Regions Bank. Paul Hultgren also attempted to reduce another credit line commitment from Regions Bank to STS-NA. Ecco Ride relied on this credit.

54. Upon information and belief, around March 27, 2017, Paul Hultgren emailed Renasant Bank to confirm that one of Ecco Ride's lines of credit had been terminated and to revoke his personal guaranty. Ecco Ride relied on this credit.

55. Upon information and belief, Paul Hultgren interfered with Ecco Ride's bank relationship with Trustmark Bank. Upon information and belief, in late-March and April 2017, Paul Hultgren requested Trustmark Bank terminate and revoke his personal guaranty and cap any additional exposure. Upon information and belief, in August 2017, Paul Hultgren again contacted Trustmark Bank about reducing Ecco Ride's line of credit, confirming the outstanding balance, and releasing him from his guaranty. Upon information and belief, Paul Hultgren was inappropriately monitoring Ecco Ride's Trustmark Bank accounts without authority.

56. Upon information and belief, Paul Hultgren either failed to disclose to these financial institutions that he was no longer a Manager or employee of Mosaic 360 and/or the Mosaic 360 Entities, or he misrepresented his position with the company or companies for purposes of furthering his access to financial information.

---

[2] STS-NA, LLC is a wholly-owned subsidiary of Ecco Ride, LLC. Mosaic Holdings LLC has controlling interest of Ecco Ride. Mosaic Holdings is a wholly-owned subsidiary of Mosaic 360.

## V.     Paul Hultgren Commits Identity Theft to Access Mosaic 360's Banking Accounts

57.     Occasionally, if Mr. Sieber and/or Mr. Johnson was traveling and unable to physically go to a financial institute, they would authorize Mrs. Karen Sieber, his wife, to act as an agent of Mosaic 360 to execute their wishes. After Paul Hultgren was terminated, on or about April 4, 2017, Mr. Sieber authorized Mrs. Sieber to meet with Wells Fargo on Mosaic 360's behalf and to have Wells Fargo remove Paul Hultgren from being an authorized signer on all of Mosaic 360's accounts and the accounts of the various Mosaic 360 Entities. On this particular occasion, Mr. Sieber called Wells Fargo while his wife was there and provided verbal consent and authorization for her to act as a Mosaic 360 agent to have Paul Hultgren removed from the bank accounts at Wells Fargo.

58.     Unbeknownst to Mosaic 360, Paul Hultgren was only removed for the Wells Fargo account for Agilex Business Solutions, LLC, a wholly-owned entity of Mosaic 360.

59.     Upon information and belief, Paul Hultgren continued to routinely access and monitor Mosaic 360's online banking accounts and the accounts of the various Mosaic 360 Entities via computer despite being terminated as an employee and removed as a Manager of Mosaic 360 and the Mosaic 360 Entities.

60.     Around January 2018, Luke Lucyk, the Vice President of Mosaic 360, was making a deposit at Wells Fargo into a Mosaic 360 account and saw Paul Hultgren's name listed as an authorized signer.

61.     Shortly after Mr. Lucyk discovered Paul Hultgren still had access to the Mosaic 360 accounts, Mosaic 360 removed Paul Hultgren's access to all of Mosaic 360's accounts and all of the accounts of the Mosaic 360 Entities. This process terminated Paul Hultgren's access to the online banking records.

62.     Upon information and belief, in February 2018, Paul and Leslie Hultgren visited Wells Fargo and demanded that Wells Fargo restore Paul Hultgren's access to Mosaic 360's banking accounts with Wells Fargo. Upon information and belief, the Hultgrens refused to leave Wells Fargo until Paul Hultgren had access to all of the Mosaic 360 and Mosaic 360 Entities bank accounts.

63.     Upon information and belief, in order to gain access to Mosaic 360's Wells Fargo accounts, Paul Hultgren fraudulently executed bank documents, claiming therein to have ongoing management responsibilities for Mosaic 360, and submitted them to Wells Fargo, who then granted him access. Upon information and belief, despite being asked if changes had been made to the Operating Agreement, Paul Hultgren lied to Wells Fargo that no changes had been made to the Operating Agreement or to his status as a Manager and the rights he had as a Manager.

64.     Upon information and belief, Paul Hultgren also fraudulently executed bank documents related to Nagel & Associates by again claiming to have ongoing management responsibilities for Mosaic 360. These too were submitted to Wells Fargo, who then granted Paul Hultgren access, though Paul Hultgren was aware, or should have been aware, at the time of his request that Mosaic 360 no longer held any ownership interest in Nagel & Associates, and therefore, Mosaic 360 itself had no right to access the Nagel accounts.

65.     Paul Hultgren's attempt to fraudulently access the Nagel accounts caused Brad Nagel, of Nagel & Associates, to be notified. After having Paul Hultgren's access eliminated, Mr. Nagel threatened Mosaic 360 with legal action due to Paul Hultgren's interference.

66.     In response, Mosaic 360 also contacted Wells Fargo and discovered Paul Hultgren's unauthorized efforts to gain access to Mosaic 360's bank accounts. Mr. Sieber then

13

spent several hours having Paul Hultgren removed from all of Mosaic 360's bank accounts and the bank accounts of the Mosaic 360 Entities.

67.     Paul Hultgren's actions caused Wells Fargo to freeze all Mosaic 360's bank accounts for approximately 5 days until the Wells Fargo legal team could analyze the Mosaic 360 Operating Agreement and determine who had access rights and management responsibilities regarding Mosaic 360's accounts. During that time, Mosaic 360 was forced to max out an alternative unused line of credit at another financial institute in order to operate its businesses and pay its employees.

68.     In total, Mosaic 360 spent close to 80 hours and tens of thousands of dollars attempting to rectify Paul Hultgren's interference with its business relationships. Paul Hultgren's conduct caused strain to Mosaic 360's business relationships with at least Nagel & Associates and Wells Fargo and was a source of embarrassment for the company.

## VI.     Paul Hultgren Continues to Make Misrepresentations to Access Mosaic 360's Financial Records

69.     In June 2018, Paul Hultgren requested access to all of the accounting and tax records for Mosaic 360 and all of the Mosaic 360 Entities. In early September, Mr. Johnson informed Paul Hultgren that he would only receive the documents necessary to complete his taxes.

70.     Paul Hultgren caused his Wipfli LLP accountant to request financial records over and above what was required for tax purposes under the auspices of a tax reporting need for Paul Hultgren's personal tax filing.

71.     Due to Wipfli's intervention on Paul Hultgren's behalf, which was supported by separate legal counsel retained by Paul Hultgren, Mosaic 360 was forced to retain legal counsel to evaluate the document request and advise Mosaic 360 as to its legal rights.

14

72.     When confronted by Mosaic 360's legal counsel, Wipfli acknowledged that the documents requested were, in fact, not necessary to complete Paul Hultgren's tax filing, but rather, had been requested at Paul Hultgren's urging to gain access to Mosaic 360 documents and financial information that he was not otherwise entitled to receive.

73.     In the fall of 2018, Paul Hultgren also contacted Associated Bank to gain information about Associated Bank's loan relationship with Mosaic 360. In doing so, Paul Hultgren again falsely held himself out as a Managing Member of Mosaic 360 and claimed he had evidence of a lending relationship between Mosaic 360 and Associated Bank and that he was entitled to access information regarding the finances of Mosaic 360.

74.     Upon receipt of Paul Hultgren's requests, Associated Bank contacted Mr. Sieber, who informed Associated Bank that Paul Hultgren was not a manager of Mosaic 360 and was not entitled to any of the information he requested.

75.     Because of Paul Hultgren's interference with Associated Bank, Mosaic 360 again engaged legal counsel, at an expense, to protect its interests and inform Paul Hultgren to cease and desist.

76.     Paul Hultgren's actions also potentially threatened harm to Mosaic 360's business relationship with Associated Bank.

## **FIRST CAUSE OF ACTION**
## **COMPUTER FRAUD AND ABUSE BY PAUL HULTGREN & LESLIE HULTGREN**

77.     The allegations in paragraphs 1 through 76 are incorporated herein by reference.

78.     The laptops and phones given to Paul Hultgren and Leslie Hultgren by Mosaic 360 are, by definition, "protected computers" under 18 U.S.C. § 1030(e)(2) because they are computers used in a manner that affects interstate commerce and communication. Both the laptop and the computer are "computers" under 18 U.S.C. § 1030(e)(1), which defines computers

15

broadly to include any "electronic . . . or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device . . . ." Because the statute includes data storage facilities within its definition of "computer," Mosaic 360's Dropbox, which is a data storage facility, also meets the definition of computer.

79.     The laptops, smartphones, and Dropbox are used to effectuate the business of Mosaic 360 and various Mosaic 360 Entities, which are involved in interstate commerce, such as investing in school bus companies that operate in several states.

80.     Under 18 U.S.C. § 1030(a)(2), it is a federal, criminal offense to intentionally access a computer without authorization or to exceed authorization granted, and thereby obtain information from any protected computer.

81.     After he was fired, Paul Hultgren intentionally accessed the email records on his laptop, a protected computer, and copied those files onto an external hard drive. Paul Hultgren did so without authorization; thereby violating federal criminal law.

82.     After he was fired, Paul and Leslie Hultgren intentionally used his personal laptop and/or external hard drive and accessed the Mosaic 360 Dropbox, a protected computer, to download and steal Mosaic 360 trade secrets, financial records, and confidential, proprietary information about investment and business opportunities. Paul Hultgren acted without authorization and Leslie Hultgren acted without authorization, or in the alternative, exceeded any authorization she may have had. In doing so, both Leslie Hultgren and Paul Hultgren violated federal criminal law.

83.     After Leslie Hultgren resigned, Leslie Hultgren and Paul Hultgren intentionally downloaded the emails from her Mosaic 360 laptop, a protected computer, onto Paul Hultgren's

personal laptop. Paul Hultgren acted without authorization and Leslie Hultgren acted without authorization, or in the alternative, exceeded any authorization she may have had. In doing so, both Leslie Hultgren and Paul Hultgren violated federal criminal law.

84.     Under 18 U.S.C. § 1030(a)(5)(A), it is a federal, criminal offense to knowingly cause the transmission of information or a command that intentionally causes damage without authorization to a protected computer. Similarly, under 18 U.S.C. § 1030(a)(5)(B) & (C), it is a federal, criminal offense to intentionally access a protected computer without authorization and either recklessly cause damage or cause damage and loss.

85.     Upon information and belief, Paul Hultgren assisted Leslie Hultgren in intentionally destroying Mosaic 360 information from her computer and/or smartphone before returning the property. Paul Hultgren and Leslie Hultgren were explicitly told not to delete any data or information from the smartphone. In doing so, Paul Hultgren and Leslie Hultgren either intentionally caused damage to the smartphone by deleting the data, which could only occur if Paul Hultgren and/or Leslie Hultgren gave the smartphone the command to delete. Or, in the alternative, their actions accessed a protected computer and either caused damage and lost or recklessly caused damage. In doing so, both Leslie Hultgren and Paul Hultgren violated federal criminal law.

86.     Paul Hultgren and Leslie Hultgren's criminal actions resulted in significantly more than $5,000 in damage and harm over a one-year period. Because Paul Hultgren and Leslie Hultgren's criminal actions resulted in significantly more than $5,000 of damage and harm, Mosaic 360 is entitled to seek civil relief under 18 U.S.C. § 1030(g).

<u>**SECOND CAUSE OF ACTION**</u>
**COMPUTER FRAUD AND ABUSE ACT BY PAUL HULTGREN**

87.     The allegations in paragraphs 1 through 76 are incorporated herein by reference.

17

88.     After being removed from the Mosaic 360 and Mosaic 360 Entities' online bank accounts at Wells Fargo, Paul Hultgren falsely indicated to Wells Fargo he was entitled to those financial records.

89.     Under 18 U.S.C. § 1030(a)(2)(A), it is a federal, criminal offense to access a computer without authorization or exceeding authorized access to obtain information contained in a financial record of a financial institution.

90.     Under 18 U.S.C. § 1030(a)(4), it is a federal, criminal offense to knowingly and with the intent to defraud, access a protected computer without authorization or to exceed authorized access, and by means of such conduct, to further the intended fraud and obtain something of value.

91.     Upon information and belief, Wells Fargo's online banking records and the program and/or data storage facility used to hold and communicate these records meet the definition of "computer," pursuant to 18 U.S.C. § 1030(e)(1).

92.     By accessing the online Wells Fargo bank records, Paul Hultgren acted without authorization and/or exceeded authorization to access a protected computer to obtain information in Mosaic 360's financial records at a financial institution.

93.     In the alternative, Paul Hultgren knowingly and with the intent to defraud, used false pretenses to access a protected computer to which he was not authorized to access, and in doing so, furthered his intended fraud and gained access to all of Mosaic 360's financial records and the financial records of the Mosaic 360 Entities, which was of value to Mosaic 360, the Mosaic 360 Entities, and Paul Hultgren.

94.     Paul Hultgren's actions to defraud Wells Fargo to gain access to financial records to which he was not entitled were federal crimes.

95.     Paul Hultgren's actions caused damage resulting over $5,000 in harm in a one-year period. Because Paul Hultgren's criminal actions resulted in over $5,000 of damage and harm, Mosaic 360 is entitled to seek civil relief under 18 U.S.C. § 1030(g).

### THIRD CAUSE OF ACTION
### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS AGAINST PAUL HULTGREN

96.     The allegations in paragraphs 1 through 76 are incorporated herein by reference.

97.     Mosaic 360 and Mosaic 360 Entities had contractual relationships with a variety of banks, including Regions Bank, Renasant Bank, Trustmark Bank, Associated Bank, Bank First National, and Wells Fargo.

98.     Paul Hultgren interfered with these contractual relationships.

99.     Mosaic 360 and Nagel & Associates, a partially-owned Mosaic 360 subsidiary, had a relationship with Bank First National. Mosaic 360 and Nagel & Associates had a prospective contract with Bank First National for funding to acquire a new company.

100.    Paul Hultgren used the trade secrets he stole from Mosaic 360 to interfere with and destroy the potential funding expected to be provided by Bank First National to Mosaic 360 and/or Nagel & Associates.

101.    Paul Hultgren also used the trade secrets he stole to interfere with a lien release between Mosaic 360 and Bank First National.

102.    Paul Hultgren's interference was intentional and unjustified.

103.    Paul Hultgren's interference caused harm to Mosaic 360 in the form of loss of funding, loss of business opportunities, legal expenses, mitigation expenses, reputational harm, and embarrassment.

## FOURTH CAUSE OF ACTION
## TRADE SECRET MISAPPROPRIATION AGAINST PAUL HULTGREN AND LESLIE HULTGREN

104. The allegations in paragraphs 1 through 76 are incorporated herein by reference.

105. Paul Hultgren and Leslie Hultgren acquired confidential, proprietary information—trade secrets—belonging to Mosaic 360 when he/she/they stole archived copies of all of his and/or her emails from his and/or her laptops after Paul Hultgren was terminated and/or Leslie Hultgren resigned from Mosaic 360 and/or Nagel & Associates.

106. The confidential, proprietary information contained information with its own economic value, both actual and potential, to Mosaic 360, Nagel & Associates, and their respective clientele, which was not readily ascertainable to other persons.

107. The confidential, proprietary information is subject to efforts to maintain its secrecy.

108. Paul Hultgren and Leslie Hultgren knew that accessing and copying the information constituted an improper means because Mosaic 360 had demanded the return of the property, both the physical property and the proprietary information.

109. Paul Hultgren's actions were willful and malicious.

110. Leslie Hultgren's actions were willful and malicious.

111. Paul Hultgren's and Leslie Hultgren's actions caused Mosaic 360 to incur significant financial harm, including mitigation expenses.

## FIFTH CAUSE OF ACTION
## IDENTITY THEFT AGAINST PAUL HULTGREN

112. The allegations in paragraphs 1 through 76 are incorporated herein by reference.

113. Paul Hultgren used identifying information from Mosaic 360 to access the Wells Fargo Bank Accounts of Mosaic 360 and the Mosaic 360 Entities.

114. Paul Hultgren intentionally used such information to gain access to records he was not entitled to see, to track Mosaic 360's activities, and to harm Mosaic 360's reputation.

115. Paul Hultgren used identifying information from Mosaic 360 to contact Regions Bank, to intentionally access information he was not entitled to, and to harm Mosaic 360's reputation.

116. Paul Hultgren used identifying information from Mosaic 360 to contact Renasant Bank, to intentionally access information he was not entitled to, and to harm Mosaic 360's reputation.

117. Paul Hultgren used identifying information from Mosaic 360 to contact Trustmark Bank, to intentionally access information he was not entitled to, and to harm Mosaic 360's reputation.

118. Paul Hultgren used identifying information from Mosaic 360 to contact Associated Bank, to intentionally access information he was not entitled to, and to harm Mosaic 360's reputation.

119. Paul Hultgren acted without the consent of Mosaic 360.

120. Paul Hultgren intentionally misrepresented that he was acting on behalf of and with the consent of Mosaic 360.

121. Paul Hultgren's actions amount to several instances of identity theft of a business in violation of Wisconsin criminal statute § 943.203.

122. Mosaic 360 suffered loss and damage because of Paul Hultgren's intentional conduct and is entitled to damages under Wisconsin Statute § 895.446.

## SIXTH CAUSE OF ACTION
## ABUSE OF PROCESS AGAINST PAUL HULTGREN

123. The allegations in paragraphs 1 through 76 are incorporated herein by reference.

124.    After Paul Hultgren and Leslie Hultgren were fired and resigned, respectively, Paul Hultgren threatened Mosaic 360 with litigation.

125.    During the threatened litigation, Paul Hultgren requested access and received Records of Mosaic 360. Upon information and belief, Paul Hultgren claimed the Records were required to assess the financial condition of Mosaic 360.

126.    The Records were provided under certain conditions, including that they would not be used for any purpose other than to evaluate the financial condition of Mosaic 360 and the Records would be destroyed 30 days after receipt by Paul Hultgren.

127.    Paul Hultgren accepted these conditions by accessing and downloading the Records.

128.    Upon information and belief, Paul Hultgren still possesses the documents and did not delete them as required.

129.    Upon information and belief, Paul Hultgren never intended to destroy the documents as he agreed to do.

130.    Upon information and belief, Paul Hultgren always intended to use the information received from Mosaic 360 as leverage against and to gain a collateral advantage over Mosaic 360, Mr. Sieber, and/or Mr. Johnson.

131.    Paul Hultgren has misused the legal process, first to obtain information from Mosaic 360 that he would not otherwise have been entitled to receive, and then in causing his wholly-owned LLC, CTH Global, to file a separate legal action against Mr. Sieber and Mr. Johnson, personally, alleging fiduciary duty breaches and financial mismanagement of Mosaic 360, based on confidential information he was not permitted to use for that purpose.

132.     Pursuant to the Mosaic 360 Operating Agreement, Mosaic 360 will likely have to indemnify Mr. Sieber and Mr. Johnson for the claims made by CTH Global in the civil suit.

133.     Paul Hultgren, by and through his accountant, demanded financial information pertaining to Mosaic 360 and the Mosaic 360 Entities for the alleged purpose of filing his federal taxes. Filing federal taxes is a legal process.

134.     Upon information and belief, Paul Hultgren knew he did not need the demanded documents in order to file his taxes.

135.     Upon information and belief, Paul Hultgren never intended to use the demanded documents in order to file his taxes.

136.     Upon information and belief, Paul Hultgren, by and through his accountant, always intended to use the information received from Mosaic 360 and the Mosaic 360 Entities not for its intended or legal purpose, taxes, but for inappropriate and harmful reasons, primarily to leverage against and to gain a collateral and/or strategic advantage over Mosaic 360, Mr. Sieber, and/or Mr. Johnson.

137.     Paul Hultgren's abuse of the legal process has caused and will continue to cause Mosaic 360 financial harm.

### SEVENTH CAUSE OF ACTION
### MISREPRESENTATION AGAINST PAUL HULTGREN

138.     The allegations in paragraphs 1 through 76 are incorporated herein by reference.

139.     Paul Hultgren and/or representatives acting on his behalf made factual representations to Mosaic 360 and/or representatives on its behalf that were untrue, misleading, or meant to deceive regarding Paul Hultgren's rights to and need for the financial information about Mosaic 360 and the Mosaic 360 Entities for his federal income taxes.

140. Paul Hultgren was negligent, reckless, or indifferent in making the representations, and made the representations with the intent to obtain information and/or things of value that he was not otherwise entitled to receive.

141. Paul Hultgren knew or should have known that his representations and the representations made on his behalf would require Mosaic 360 to act, including to incur expenses responding to his claims.

142. Mosaic 360 relied on Paul Hultgren's representations in so far as it retained legal counsel to review his right to and need for financial information related to his tax reporting and the company's obligations to Paul Hultgren under its Operating Agreement.

143. Paul Hultgren's false representations have caused financial loss to Mosaic 360.

WHEREFORE, the Plaintiff, Mosaic 360, LLC, prays for judgment in its favor and against the Defendants, Paul and Leslie Hultgren, as follows:

a) An award of damages against Paul Hultgren to compensate Mosaic 360 for the past, present and future harm it has sustained as a result of Paul Hultgren Hultgren's conduct;

b) An award of damages against Leslie Hultgren to compensate Mosaic 360 for the past, present and future harm it has sustained as a result of their conduct;

c) A declaration that Defendants have acted willfully and maliciously;

d) An award of punitive damages for Defendants' willful and malicious actions;

e) An award of damages against Defendants for the cost of investigation and litigation pursuant to his criminal activities;

f) An award of exemplary damages for Defendants' criminal activity;

g)  A permanent injunction preventing Paul Hultgren from contacting any third-party institution for information about Mosaic 360's finances or the finances of any of the Mosaic 360 Entities;

h)  An order requiring Defendants to return any and all of the company property retained by either Defendant, including, but not limited to Paul Hultgren's smartphone and work laptop, and any other proprietary information belonging to Mosaic 360 and/or the Mosaic 360 Entities;

i)  An order requiring Defendants to turn over the hard drive containing Paul Hultgren's archived Mosaic 360 emails and any other proprietary information belonging to Mosaic 360 and/or the Mosaic 360 Entities and certifying under the penalty of perjury that they no longer have any proprietary information belonging to Mosaic 360 or Mosaic 360 Entities to which they are not entitled;

j)  An award to Mosaic 360 of their costs and actual attorneys' fees incurred in this matter, including those specifically authorized by any applicable federal statute, court costs, taxable costs, and the cost associated with the retention, preparation and testimony of expert witnesses; and

k)  An award to Mosaic 360 of such other relief as the Court deems appropriate.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues triable to a jury in this action.

DAVIS & KUELTHAU, S.C.

Dated:  March 6, 2019.                    *s/ Matthew R. McClean*
                                          Matthew R. McClean
                                          State Bar No. 1041470
                                          Tiffany E. Woelfel
                                          State Bar No. 1093779

                                          *Attorneys for Plaintiff, Mosaic 360, LLC*

Direct contact information:

Matthew R. McClean          414.225.1420 direct dial
                            414.278.3620 direct fax
                            mmcclean@dkattorneys.com
                            111 E. Kilbourn Avenue, Suite 1400
                            Milwaukee, WI 53202

Tiffany E. Woelfel          (920) 431-2232 direct dial
                            (920) 431-2272 direct fax
                            twoelfel@dkattorneys.com
                            318 S. Washington St., Suite 300
                            Green Bay, WI  54301