**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**MOSAIC 360, LLC.**

      **Plaintiff,**

      v.                                              Case No. 2:19-cv-00341-JPS

**PAUL HULTGREN and**
**LESLIE HULTGREN,**

      **Defendants.**

---

**REPLY IN SUPPORT OF MOTION TO DISMISS AND COMPEL ARBITRATION**

---

Defendants Paul Hultgren and Leslie Hultgren submit this reply in support of their motion for entry of an order dismissing this case and compelling arbitration of the claims asserted in the complaint.

**I.     The plaintiff is bound by its prior successful argument that the arbitration clause is very broad and leads to a presumption of arbitrability.**

The plaintiff argues that the arbitration clause in the Operating Agreement is "narrow" in scope, citing a Delaware case. From this, it goes on to argue that the arbitration clause does not apply to the claims in this case because they do not "directly relate to any of the rights within the Operating Agreement." (Pl. Brief, Dkt. No. 16, pp. 5-6.) This argument is made entirely in bad faith, and the plaintiff should be estopped from taking this position.

In the Ozaukee case, Brenen Sieber and Ryan Johnson moved to compel the claims against them to arbitration, relying on the arbitration clause in the Operating Agreement. They argued:

> Where there is a valid arbitration clause, there is a presumption of arbitrability and doubts should be resolved in favor of arbitration. *AT&T Techs., Inc. v. Comms. Workers of Amer.*, 475 U.S. 643, 650 (1986).
>
> …
>
> The Operating Agreement contains a valid arbitration clause that is enforceable for any dispute arising with respect to the Operating Agreement, including the interpretation or alleged breach thereof. ***The United States Supreme Court has previously explained that arbitration clauses with language similar to the one at issue here are very broad and there should be a presumption of arbitrability.*** *Id*.
>
>> Such a presumption is particularly applicable where the clause is as broad as the one employed in this case, which provides for arbitration of "any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder . . . ." In such cases, "[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."
>
> *Id*. (citing *United Steelworkers of Amer. v. Warrior & Gulf*, 363 U.S. 574, 584-85 (1960)). "Broad arbitration provisions are generally those that apply to 'any dispute' or 'all disputes' arising from an agreement." *In re FBI Wind Down, Inc.*, 252 F. Supp. 3d 405, 414 (D. Del. 2017) (citations omitted).
>
> ***Here, the arbitrability clause is very broad.*** It states that: "Any dispute arising with respect to this Agreement, its making or validity, its interpretation, or its breach shall by settled by arbitration . . . ."

(Ozaukee Brief, Dkt. No. 11.3, emphasis added.)

Johnson and Sieber took the position that the arbitration clause in the Operating Agreement is "very broad" and subject to a presumption of arbitrability. They cited Supreme Court and Delaware precedent for the notion that this clause is broad and applies to any or all disputes. They were successful in this position, and the Ozaukee court ordered that case to arbitration. (Dkt. No. 11.4.)

Now, when defending a motion to arbitrate, Johnson and Sieber take the opposite position. They claim the arbitration provision is narrow and that "this Court should apply the 'narrow in scope' test" to determine arbitrability.

2

Not only is this a blatant exercise of bad faith, but the argument should be precluded due to judicial estoppel. Judicial estoppel protects the judicial process and "protects the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 795 (7th Cir. 2013) (quotation omitted). The inquiry typically looks to whether a party takes a later position clearly inconsistent with an earlier position, whether the party succeeded in persuading the court to accept the earlier position such that it would appear that either the first or second court was misled, and whether the party would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id.*

Judicial estoppel can still apply even if the parties taking the inconsistent positions are not identical. *Id.* at 796. Since it exists to protect the integrity of the judicial process, courts have freedom to consider the equities of the case. *Id.* This includes consideration of whether a non-party's conduct can give rise to judicial estoppel. *Id.*

Although the named plaintiff in this case is Mosaic 360, LLC, it is really Brenen Sieber and Ryan Johnson seeking relief against the defendants. They admit as such in the complaint: "Mr. Sieber and Mr. Johnson are authorized by virtue of their ownership interests in Mosaic 360 and their role as Managing Members ***to pursue an action on behalf of Mosaic 360***." (Complaint, Dkt. No. 1, ¶ 19, emphasis added.) Paul Hultgren, through his wholly-owned LLC, is a member of Mosaic 360. The only parties who would benefit from a judgment in this case are Sieber and Johnson. The same law firm and lawyers are representing Sieber and Johnson in the Ozaukee case and the plaintiff in this case.

The Court should not allow Sieber and Johnson to manipulate the judicial process by taking a position diametrically opposed to their prior, successful position. The arbitration clause

3

was broad and nearly all-encompassing when the outcome they desired in Ozaukee was arbitration. Now, when they want to avoid arbitration in this case, they try to reverse course. The Court should not allow this manipulation by "chameleonic litigants."

The plaintiff suggests that the defendants are arguing that simply because arbitration was ordered in the Ozaukee case, it must be ordered in this case. That is not the defendants' argument. The issues raised in the complaint in this case implicate the parties' contractual agreement to arbitrate. The arbitration clause and its application to potential claims should simply be viewed in the same light in this case as it was in the Ozaukee case.

*AT&T Techs.*, cited favorably in support of this same arbitration clause by Sieber and Johnson, provides a strong presumption of arbitrability in this case.

> Finally, it has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that [an] order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage. Such a presumption is particularly applicable where the clause is as broad as the one employed in this case, which provides for arbitration of any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder . . . . ***In such cases, [in] the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.***

*AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986). This strong presumption of arbitrability, combined with the particular issues raised by the claims in this case, lead to the conclusion that the claims in this case must be arbitrated.

II.   **The plaintiff's arguments presuppose that the legal questions in this case have all been resolved in its favor.**

Another problem that pervades the plaintiff's arguments against arbitration is that the plaintiff consistently imagines that the relevant legal questions to be answered in this case have

all already been resolved in its favor. This is the only way it can justify ignoring the arbitration clause.

The arbitration clause requires arbitration of any dispute "arising with respect to this Agreement, its making or validity, its interpretation, or its breach… ." (Dkt. No. 11.2, Sec. 12.6.) Disputes arising "with respect to" the Operating Agreement must be arbitrated. Disputes requiring interpretation of the Operating Agreement must be arbitrated.

The arbitration clause is plainly triggered by the claims in this case. Paul Hultgren was a manager and employee of Mosaic 360. Through his wholly-owned LLC, he was a member of Mosaic 360. Whether the defendants accessed computer information "without authorization" requires an analysis of whether the membership or managerial positions authorized access. Whether the defendants accessed Mosaic 360's information, giving rise to claims for tortious interference, trade secret misappropriation, and identity theft, requires an analysis of whether the membership or managerial positions authorized access to such information. Likewise for the claims of abuse of process and misrepresentation—they turn on the question of whether the defendants were entitled to certain financial information, which requires an analysis of their level of entitlement.

In response, the plaintiff argues that the defendants acted after Paul Hultgren's termination as an employee and removal as a manager. Thus, they argue that he could not possibly have been authorized to take such actions. (Pl. Brief, Dkt. No. 16, pp. 8-10.) Naturally, the plaintiff wants this to be the outcome of the case. But it cannot simply skip the step of proving that Paul Hultgren was properly and effectively terminated as an employee and removed as a Manager. To do so, it must rely on the Operating Agreement and its interpretation.

It also must prove that Paul Hultgren was not, by virtue of his ongoing membership position through his LLC, entitled to take the actions he allegedly took. Paul Hultgren was the only member of CTH Global, LLC, itself a member of Mosaic 360. (Complaint ¶¶ 11-14.) CTH Global, LLC could only act through Paul Hultgren, its agent. Paul Hultgren was authorized to take any actions CTH Global, LLC was authorized to take by virtue of his status as its sole member. The plaintiff cannot skip the step of proving that Paul Hultgren was not entitled to take the actions he allegedly took due to CTH Global, LLC's membership rights. To do so, it must rely on the Operating Agreement and its interpretation. The Operating Agreement sets forth the members' rights.

For example, under the Computer Fraud and Abuse Act, whether an employee (or party to a contract) acts "without authorization" depends on whether that party's authorization has been effectively terminated by operation of law. *Jarosch v. Am. Family Mut. Ins. Co.*, 837 F. Supp. 2d 980, 1021 (E.D. Wis. 2011). Determining whether an employee (or an ex-employee) acts "without authorization" can require an evaluation of the underlying employment agreement between the parties. *Landmark Credit Union v. Doberstein*, 746 F. Supp. 2d 990, 994-95 (E.D. Wis. 2010).

This is not an outside hacker accessing computer systems with no possible connection to the plaintiff. This is a party that clearly had some authorization (either presently or in the past). The question is whether that authorization was exceeded or effectively withdrawn.

The plaintiff wants to assume that the "without authorization" element is a given, along with the similar elements in the other claims. It is not a given. It requires an examination of what access and authorization Paul Hultgren (individually and acting through his LLC) had under the Operating Agreement, and whether that access and authorization was ever revoked. Those

6

questions cannot be answered without reference to and interpretation of the Operating Agreement.

All of the plaintiff's claims follow the same pattern. They cannot be proven without determining Paul Hultgren's authority under the Operating Agreement. Just because a claim is asserted as a tort claim (rather than a breach of the contract containing the arbitration clause) does not mean that the arbitration clause cannot control. *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 643 (7th Cir. 1993). The claims in this case must be arbitrated according to the parties' agreement.

## III.  The claims against Leslie Hultgren should be arbitrated or stayed.

The plaintiff argues that the claims against Leslie Hultgren are not subject to arbitration, and that even if some claims are ordered to arbitration, the Court should order the remaining claims to proceed. This argument fails for several reasons.

First, the claims against Leslie Hultgren are arbitrable themselves. Even if a party is not a signatory to an arbitration agreement, claims against it may still fall under the reach of the agreement if they are sufficiently related. One of the grounds for such a scenario is in "allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." *Holden v. Deloitte & Touche LLP*, 390 F. Supp. 2d 752, 768 (N.D. Ill. 2005). *See also Hoffman v. Deloitte & Touche, LLP*, 143 F. Supp. 2d 995, 1004-05 (N.D. Ill. 2001) (Equitable estoppel allows a non-signatory to compel arbitration when the claimant must rely on the terms of the written agreement and when the signatory raises allegations of interdependent and concerted misconduct by the non-signatory and a signatory).

7

Second, even if it finds the claims against Leslie Hultgren to be nonarbitrable, the Court may still stay those proceedings in the interest of judicial economy pending resolution of the arbitrable claims. Courts have authority to stay a proceeding if there are claims remaining against a non-signatory and related claims against a signatory are ordered to arbitration. *IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 530 (7th Cir. 1996) (principles of parallel-proceeding abstention); *Morrie Mages & Shirlee Mages Found. v. Thrifty Corp.*, 916 F.2d 402, 407 (7th Cir. 1990) (Federal Arbitration Act); *Allied Van Lines, Inc. v. Orth Van & Storage, Inc.*, 2005 U.S. Dist. LEXIS 13616, at *7 (N.D. Ill. June 3, 2005) (principles of judicial economy and inherent control of disposition of cases).

Third, the plaintiff is judicially estopped from taking the position that any potential remaining claims against Leslie should proceed in this Court. In the Ozaukee case, Sieber and Johnson took the position that claims against non-signatories that were reliant on the arbitrable claims "should be stayed until the arbitrator can decide" the arbitrable claims. (Dkt. No. 11.3.) Their reasoning was that the remaining claims could "disappear" depending on the outcome of the arbitration and it would "conserve resources for all parties and the Court to stay the Circuit Court proceedings until the matter can be arbitrated." (*Id.*) They were successful in this position, and the claims against Luke Lucyk and Associated Bank are currently stayed and held in abeyance pending the completion of the arbitration. (Dkt. No. 11.4.) The plaintiff cannot reverse course and take the opposite position in this case.

## Conclusion

For the reasons as stated in this reply brief and in the defendants' original motion, brief, and supporting documents, the Court should dismiss this action pursuant to Fed. R. Civ. P. 12(b)(3) and order that the claims in the complaint must be arbitrated.

Dated: May 17, 2019.

                                                   */s/ Jerome R. Kerkman*
Jerome R. Kerkman
Gregory M. Schrieber

Kerkman & Dunn
Attorneys for Defendants Paul
Hultgren and Leslie Hultgren

P.O. Address:

839 N. Jefferson St., Suite 400
Milwaukee, WI 53202-3744
Phone: 414.277.8200
Facsimile: 414.277.0100
Email: gschrieber@kerkmandunn.com